IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ASIM SIDDIQUI, | § | |
| | § | CIVIL ACTION NO. 4:21-cv-2657 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| INOAPPS – INNOVATIVE | § | |
| APPLICATIONS, INC. dba INOAPPS | § | JURY TRIAL DEMANDED |
| USA, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Asim Siddiqui ("Plaintiff" or "Siddiqui") is a former employee of Defendant Inoapps – Innovative Applications, Inc. dba Inoapps USA ("Defendant" or "Inoapps") who sues for race and national origin discrimination and retaliation under Title VII, 42 U.S.C. § 1981, and the Texas Labor Code, along with claim for breach of his employment agreement.  Plaintiff would respectfully show the Court as follows:

## I.
## PARTIES

1.      Plaintiff Asim Siddiqui is a resident of Frisco, Collin County, Texas.

2.      Defendant Inoapps USA is a domestic for-profit entity registered with the Texas Secretary of State, headquartered in Houston, Harris County, Texas, and may be served with process through its registered agent Gary W. Miller at 2925 Richmond Avenue, 14th Floor, Houston, Texas 77098.

## II.
## JURISDICTION AND VENUE

3.      Jurisdiction and venue are proper in this district under federal statutory law, particularly Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et.seq.*, and 42 U.S.C. § 1981.

4.      This Court is vested with original and supplemental jurisdiction over these claims by operation of 28 U.S.C. §§ 1331, 1343, and 1367.

5.      This Court has pendant jurisdiction over the state law claims asserted by Plaintiff herein, including those claims asserted under Chapter 21 of the Texas Labor Code and Texas law and/or statute.

6.      Venue also lies in this judicial district, pursuant to 28 U.S.C. § 1391, because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

7.      Plaintiff timely filed charges of race and national origin discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and requested his Charge be dually filed with the Texas Workforce Commission ("TWC"), a Fair Employment Practices Agency ("FEPA").  Plaintiff received his Right to Sue Letter from the EEOC on or about July 2, 2021.  A true and correct copy of his Right to Sue Letter is attached hereto and fully incorporated here in as **Exhibit 1**.

8.      Plaintiff's Original Complaint is filed within sixty (60) days of Plaintiff's receipt of the Right to Sue Letter.

**III.**
**FACTUAL BACKGROUND**

**A.**   **Plaintiff's Hiring and Employment Agreement with Inoapps.**

9.      Plaintiff Asim Siddiqui is of Pakistani-descent.   He began working for Inoapps as HCM Cloud Transformation Practice Leader ("HCM Practice Lead") in Frisco, Texas on or about May 20, 2019.   On that date, the parties entered into an Employment Agreement, which is attached hereto in redacted form as **Exhibit 2**.   The Employment Agreement described Plaintiff's duties in paragraph 2 as:

> (a)   "perform[ing] the duties and functions that are normal and customary to such position as well as such other duties as shall be determined by the President of Employer from time to time;
>
> (b)   "devot[ing] full-time efforts to Employee's duties as an employee of Employer, and… us[ing] Employee's best efforts to perform the duties of Employee's position in an efficient and competent manner and… us[ing] Employee's best efforts to promote the interests of Employer and its subsidiaries and affiliates";
>
> (c)   "agree[ing] not to (i) solely or jointly with others undertake or join any planning for or organization of any business activity competitive with the Business of Employer, and (ii) directly or indirectly, engag[ing] or participat[ing] in any other activities which are in conflict with the best interests of Employer";
>
> (d)   "refer[ring] to Employer all opportunities to which Employee might become exposed in"; and
>
> (e)   "carrying out Employee's duties and responsibilities hereunder that related to the Business of Employer."

10.      The Employment Agreement omitted any requirements that Plaintiff engage in sales or sales quotas and promised no compensation to Plaintiff for sales or meeting sales quotas.

11.     Section 5(c) of the Employment Agreement provided the five (5) grounds under which Inoapps could terminate Plaintiff 'for Cause:'

> (i)   "Any embezzlement or wrongful diversion of funds of Employer or any subsidiaries or affiliates of Employer by Employee;
>
> (ii)   "Gross malfeasance by Employee in the conduct of Employee's duties;
>
> (iii)   "Material breach of this Agreement and the failure to cure such alleged breach within ten (10) days after written notice thereof, which written notice describes in reasonable detail the nature of such alleged breach;
>
> (iv)   "Gross neglect by Employee in carrying out Employee's duties; or
>
> (v)   "The charging of Employee of a felony, or any other crime or offense involving moral turpitude."

## B.     Inoapps' Employee Handbook Sets Requirements for Disciplinary Action to Terminate an Employee.

12.     Inoapps' Employee Handbook outlines a progressive disciplinary process for employees that includes a First Written Warning, a Final Written Warning, an Improvement Meeting, suspension and/or demotion or transfer, and, finally, termination.

13.     The Employee Handbook provides, "Dismissal may only be authorised [sic] by a Director."  Dismissal is usually only appropriate when:

> • "an employee's misconduct has persisted, exhausting all other lines of disciplinary procedure;" and/or
> • "an employee's behaviour [sic] or action is considered to be an act of Gross Misconduct."

14.     The Employee Handbook further states: "Employees will not normally be dismissed without previous warnings.  However, in serious cases of gross negligence or

gross misconduct… dismissal without previous warnings may be appropriate."   The

Employee Handbook explicitly requires "a full and proper investigation must take place

prior to any decision or disciplinary action being taken" for gross misconduct.   The

Employee Handbook provides a list of gross misconduct examples:

- "Theft or fraud, including unauthorized [sic] possession of Company property
- "Breaches of confidentiality, prejudicial to the interest of the Company or client of the Company
- "Being unfit for duty because of the misuse/consumption of drugs or alcohol
- "Refusal to carry out a reasonable management instruction which is within the individual's capabilities and which would be seen to be in the interests of the Company
- "Breach of security procedures
- "Actions of a dishonest nature
- "Physical assault, breach of the peace or verbal abuse
- "Bullying, harassment or unlawful discrimination
- "Conduct which has brought or could bring the Company into disrepute
- "Unauthorised [sic] absence
- "Moonlighting
- "False declaration of qualifications or professional registration
- "Serious failure to observe Company rules, regulations or procedures
- "Serious misuse or willful damage of property at work
- "Gross incompetence or failure to apply sound professional judgment."

## C.   Inoapps' Purported Policy of Non-Retaliation for Reporting Incidents of Discrimination.

15.     Inoapps' Employee Handbook encourages employees to report information

they reasonably believe tends to show discrimination.  The Employee Handbook promises,

"Employees will suffer no detriment of any sort for making such a disclosure in accordance with this procedure.  Staff must not threaten or retaliate in any way against an employee who has made a protected disclosure."

### D.     Plaintiff's Reports of Discrimination Related to Inoapps' Female Employees of Color and National Origin.

#### Incident #1:  Pregnancy Discrimination of Female Employee

16.     In March 2020, Inoapps ordered Plaintiff to terminate a pregnant employee, identified here as "Jane Doe #1," only *one month before* her due date.  The prior month, Jane Doe #1 had been on a performance improvement plan and satisfactorily met all of the goals.  Plaintiff informed Tim Buzzelli ("Buzzelli"), his Inoapps supervisor, that Jane Doe #1 had passed all of the evaluation criteria.  Mr. Buzzelli responded, "Andy [Bird, Inoapps' CEO] has already made up his mind, we're going to let her go."  Plaintiff protested Jane Doe #1's termination because the employee would lose her health insurance before the birth of the baby, and the termination did not comply with the tiered disciplinary process set forth in Inoapps' Employee Handbook.  Buzzelli retorted, "Can she not get on her husband's employer's insurance?"

17.     According to the Inoapps' Employee Handbook, *inter alia,* "Employees will not normally be dismissed without previous warnings" except in "serious cases of gross negligence or gross misconduct."  Jane Doe #1 had not engaged in, nor was she accused of, gross negligence or gross misconduct prior to her termination.   When Jane Doe #1 successfully completed each of the specific tasks and work performance goals outlined in the performance plan, Inoapps suddenly terminated her "without cause."

### *Incident #2:  Contemplated Pregnancy Discrimination of Female Employee*

18.    In January 2020, during a global review meeting of personnel led by Inoapps' CEO Andy Bird and attended by all people-managers from the US and the UK, the downgrading of a female employee's performance rating *specifically because she was on an extended maternity leave* was openly discussed.  Herein, this employee is referenced as Jane Doe #2.  The HR manager on the call failed to advise the people-managers that such action was blatantly discriminatory.  Plaintiff has worked in HR globally for more than 20 years, so he felt it necessary to speak up and warn those on the call that such an adverse employment action would violate labor laws.  Only after Plaintiff spoke up did the team decide to leave Jane Doe #2's performance rating as-is and not downgrade it.

### *Incident #3:  Discriminatory Remarks Made to Black Female Employee About Her Music Choice*

19.    A Black female employee, identified here as "Jane Doe #3," complained of racial discrimination to Plaintiff during a workplace conversation.  She reported that a White male employee had made discriminatory remarks about her choice of rap music as a negative stereotype.  Plaintiff encouraged Jane Doe #3 to report the incident to Buzzelli, their supervisor.  During the conversation, Inoapps' CEO, Andy Bird, happened to step out of his office and was about to leave.  Plaintiff immediately suggested Jane Doe #3 raise her concern with Bird, and the two of them left together.

20.    The next morning Buzzelli expressed discomfort with the fact that Plaintiff encouraged Jane Doe #3 to address the incident with Bird as he was leaving the office.  Buzzelli downplayed Jane Doe #3's discrimination concerns and stated that it was not the

first time such an incident had occurred with Jane Doe #3 and that she was one to make a 'big deal' out of it.  Buzzelli's comment demonstrated Jane Doe #3 must have encountered similar racial incidents in the past at Inoapps without the company evaluating each complaint fairly and without prejudice.

**E.**     **Inoapps' Discrimination of and Retaliation Against Plaintiff.**

   *(1)  Discriminatory Conduct at June 2020 Business Review Meeting*

21.     At a June 9, 2020 business review meeting attended by managers and officers of Inoapps, Plaintiff was the only racial minority present.  All of the US employees holding laterally similar positions to Plaintiff or supervisory positions above Plaintiff were White males:  Andy Bird, CEO; Ally Rule, CFO, Pascal Grumel, COO; Tim Buzzelli, US Delivery Manager and acting ERP Team Lead; Ed Jeavons, V.P. of EPM & BI; and Tim Galloway, V.P. of Sales.  Additionally, the US Sales Directors were White males:  Thomas McAdams, Mark Hohlbein, and Andrew Mathers.

22.     Plaintiff attended the business review meeting in his capacity as the HCM Practice Lead; the ERP and EPM Practice Leads are the lateral job equivalents of Plaintiff's position.  Both of these Practice Leads are White males.

23.     On August 5, 2020, Inoapps' attorney admitted the following: "Senior management acknowledged that both the ERP and EPM practice's [sic] were performing as poorly as the HCM practice as a whole."

24.     Nevertheless, Inoapps' CEO Andy Bird went out of his way to single Plaintiff out for humiliation during the meeting.  Bird's conduct and language towards

Plaintiff were demeaning and hostile, and none of the White males were treated in the same fashion.

### *(2)* *Plaintiff's Termination in Violation of Inoapps' Tiered Disciplinary Process and in Breach of the Employment Agreement*

25.     On June 29, 2020, Plaintiff's supervisor, Tim Buzzelli informed Plaintiff that he was being terminated 'for Cause.'  Buzzelli gave two reasons for the termination.  First, he said Inoapps had received complaints about Plaintiff.  Buzzelli did not provide information about (i) the nature of the complaints, (ii) the date of the complaints, and (iii) the person(s) making the complaints.  Importantly, Buzzelli did not permit Plaintiff the opportunity to refute the anonymous and unspecified complaints – either verbally or in writing.

26.     Buzzelli stated the second reason for Plaintiff's termination was because his performance as Practice Lead was poor and that he did not have all of his numbers prepared for the business review meeting on June 9, 2020.  However, Inoapps' attorney admitted that the other two practice leads, who are White males, were perceived to have performed as poorly as Plaintiff.  Buzzelli did not review with Plaintiff how his numbers preparation was deficient in comparison with the White male practice leads, nor did he provide Plaintiff with information that Plaintiff was not qualified for his job.

27.     Buzzelli and Inoapps failed to "exhaust[] all other lines of disciplinary procedure," as set forth in the Employee Handbook, before terminating Plaintiff for Cause. In particular, the Employee Handbook expressly states, "Employees will not normally be dismissed without previous warning" except in "serious cases of gross negligence or gross

misconduct."   Plaintiff was not accused of gross negligence or gross misconduct. According to the Employee Handbook, such an accusation would have required "a full and proper investigation… prior to any decision or disciplinary action being taken."  Buzzelli and Inoapps failed to conduct even a cursory investigation as to the accuracy or truthfulness any complaints against Plaintiff.

28.    Buzzelli and Inoapps also breached Plaintiff's Employment Agreement, which provides only five grounds for terminating Plaintiff 'for Cause:'

> (i)   "Any embezzlement or wrongful diversion of funds of Employer or any subsidiaries or affiliates of Employer by Employee;
>
> (ii)   "Gross malfeasance by Employee in the conduct of Employee's duties;
>
> (iii)   "Material breach of this Agreement and the failure to cure such alleged breach within ten (10) days after written notice thereof, which written notice describes in reasonable detail the nature of such alleged breach;
>
> (iv)   "Gross neglect by Employee in carrying out Employee's duties; or
>
> (v)   "The charging of Employee of a felony, or any other crime or offense involving moral turpitude."

29.    The reasons Buzzelli gave for terminating Plaintiff 'for Cause' do not comply with the terms of the Employment Agreement.

### (3)   _Subsequent False Accusations Demonstrate Pretext for Termination_

30.    Following Plaintiff's termination, Inoapps accused Plaintiff of consistently failing to meet billable hours and sales targets.  These after-the-fact accusations appeared in an August 31, 2020 letter from Inoapps' attorney, more than two (2) months after

Plaintiff was terminated. The accusations are false and demonstrate a pretext for Plaintiff's wrongful termination.

31.     First, Plaintiff's Employment Agreement does not specify or require a billable target as part of Plaintiff's job description.   Four months *after* Plaintiff was hired, Buzzelli suddenly informed him of a billable target of 25%.  However, when Plaintiff tried to bill his time, he was repeatedly instructed to remove his hours because it made projects too expensive to deliver and sell.  On August 31, 2020, Inoapps was asked to provide proof that Plaintiff was hired with a billable target as part of his job description.  Inoapps never produced any documentation supporting this accusation.

32.     Second, the subsequent claim that Plaintiff failed to meet a measurable sales target while employed by Inoapps is also false and pretextual.   On August 31, 2020, Inoapps was asked to provide proof that Plaintiff was ever provided a measurable sales target.  Inoapps never responded.

**F.     Plaintiff's EEOC/FEPA Charge.**

33.     Before filing a Charge with the EEOC, Plaintiff again addressed the discriminatory conduct he witnessed against three (3) females who were minorities and/or pregnant, along with Inoapps' discrimination and retaliation against him.  Letters dated July 14, 2020 and August 31, 2020 were sent to Inoapps' CEO Andy Bird and Inoapps' Group Legal Counsel.  Inoapps did nothing.  On October 15, 2020, Plaintiff filed a Charge with the EEOC/FEPA for race and national origin discrimination and retaliation.

# IV.
# CAUSES OF ACTION

34.   ***Alternative Pleadings***.  To the extent necessary, each of the claims set forth below is pleaded in the alternative.

### COUNT ONE:  VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964: RACE/NATIONAL ORIGIN DISCRIMINATION AND RETALIATION

35.   Paragraphs 1 through 34 of this Complaint are hereby referenced and fully incorporated as though fully set forth herein.

36.   As set forth above, Inoapps' actions amount to discrimination and retaliation, and constitute violations under Title VII.[1]  Innoapps is prohibited from discriminating against Plaintiff based on his race and national origin, and further Inoapps is prohibited from retaliating against Plaintiff because he opposed discrimination against other employees based upon their race, national origin, gender and/or pregnancy.

37.   Additionally or alternatively, the manner and/or method by which Inoapps applied or did not apply its policies and/or procedures resulted in disparate and/or discriminatory impact upon Plaintiff, by: (i) singling Plaintiff out for abuse and public humiliation in comparison with White males in similar positions who were perceived to be performing poorly; (ii) failing to follow its tiered disciplinary process before terminating Plaintiff; (iii) failing to investigate the alleged complaints against Plaintiff and failing to provide Plaintiff with any information about the complaints against him before termination; (iv) failing to provide Plaintiff with an opportunity to respond to the alleged complaints

---

[1] *See* U.S.C. §§ 2000e. *et. seq.*

before terminating him; (v) breaching the Employment Agreement by terminating Plaintiff 'for Cause' when Plaintiff did not commit gross misconduct pursuant to the terms of the Employment Agreement; and (vi) preventing Plaintiff from continued employment at Inoapps.

38.     Additionally or alternatively, such conduct by Inoapps is an impermissible form of retaliation against Plaintiff because it was based upon Plaintiff's exercise of his rights to engage in a protected activity, including but not limited to Plaintiff's opposition of Inoapps' unlawful practices under Title VII and/or Plaintiff's notice, assistance or participation in claims of discrimination against other employees based upon those employees' race, national origin, gender or pregnancy.  Retaliation of this nature is prohibited by Title VII.  As a result of Plaintiff's protected activity, Inoapps breached his Employment Agreement and terminated him.

39.     This claim is timely because Plaintiff filed an EEOC/FEPA Charge within 180 days of his termination.  Plaintiff filed suit within 60 days of receiving the EEOC's Right to Sue Letter.

40.     As a result of the foregoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or equity, including but not limited to his damages from said conduct by Inoapps in an amount to be proven and/or determined at the time of trial, equitable relief, and attorneys' fees and costs.

## COUNT TWO:  VIOLATION OF 42 U.S.C. § 1981
### RACE DISCRIMINATION AND RETALIATION

41.     Paragraphs 1 through 40 of this Complaint are hereby referenced and fully incorporated as though fully set forth herein.

42.     Plaintiff provided services to Inoapps pursuant to a contract.

43.     As set forth above, Inoapps' actions amount to discrimination and retaliation, and constitute violations under 42 U.S.C. § 1981.  Innoapps is prohibited from discriminating against Plaintiff based on his race.

44.     Andy Bird's conduct at the business review meeting held Plaintiff, the only non-White manager, up to great derision and embarrassment before Inoapps' entire management team.

45.     White males practice leads, who were deemed by Inoapps to have poor performances similar to or worse than Plaintiff's performance were not terminated.

46.     Inoapps' breached Plaintiff's Employment Agreement by falsely terminating him 'for Cause' when Plaintiff had not committed any of the grounds for gross misconduct identified in the Employment Agreement.  The White male practice leads were not mistreated in this fashion.

47.     Additionally or alternatively, Inoapps retaliated against Plaintiff because he engaged in a protected activity, including but not limited to Plaintiff's opposition of Inoapps' discrimination against other employees based upon their race.  Retaliation of this nature is prohibited by § 1981.  As a result of Plaintiff's protected activity, Inoapps terminated him.

48.     This claim is timely because Plaintiff filed suit within four (4) years of his termination.

49.     As a result of the foregoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or equity, including but not limited to his damages from said conduct by Inoapps in an amount to be proven and/or determined at the time of trial, equitable relief, and attorneys' fees and costs.

### COUNT THREE:  VIOLATION OF CHAPTER 21 OF THE TEXAS LABOR CODE RACE/NATIONAL ORIGIN DISCRIMINATION AND RETALIATION

50.     Paragraphs 1 through 49 of this Complaint are hereby referenced and fully incorporated as though fully set forth herein.

51.     As set forth above, Inoapps' actions amount to discrimination and retaliation, and constitute violations under Chapter 21 of the Texas Labor Code.  Innoapps is prohibited from discriminating against Plaintiff based on his race and national origin, and further Inoapps is prohibited from retaliating against Plaintiff because he opposed discrimination against other employees based upon their race, national origin, gender and/or pregnancy.

52.     Additionally or alternatively, the manner and/or method by which Inoapps applied or did not apply its policies and/or procedures resulted in disparate and/or discriminatory impact upon Plaintiff, by: (i) singling Plaintiff out for abuse and public humiliation in comparison with White males in similar positions who were perceived to be performing poorly; (ii) failing to follow its tiered disciplinary process before terminating Plaintiff; (iii) failing to investigate the alleged complaints against Plaintiff and failing to

provide Plaintiff with any information about the complaints against him before termination; (iv) failing to provide Plaintiff with an opportunity to respond to the alleged complaints before terminating him; (v) breaching the Employment Agreement by terminating Plaintiff 'for Cause' when Plaintiff did not commit gross misconduct pursuant to the terms of the Employment Agreement; and (vi) preventing Plaintiff from continued employment at Inoapps.

53.     Additionally or alternatively, such conduct by Inoapps is an impermissible form of retaliation against Plaintiff because it was based upon Plaintiff's exercise of his rights to engage in a protected activity, including but not limited to Plaintiff's opposition of Inoapps' unlawful practices under Chapter 21 of the Texas Labor Code and/or Plaintiff's notice, assistance or participation in claims of discrimination against other employees based upon those employees' race, national origin, gender or pregnancy.  Retaliation of this nature is prohibited by Chapter 21 of the Texas Labor Code.  As a result of Plaintiff's protected activity, Inoapps breached his Employment Agreement and terminated him.

54.     This claim is timely because Plaintiff filed an EEOC/FEPA Charge within 180 days of his termination.  Plaintiff filed suit within 60 days of receiving the Right to Sue Letter.

55.     As a result of the foregoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or equity, including but not limited to his damages from said conduct by Inoapps in an amount to be proven and/or determined at the time of trial, equitable relief, and attorneys' fees and costs.

## COUNT FOUR:  BREACH OF CONTRACT

56.     Paragraphs 1 through 55 of this Complaint are hereby referenced and fully incorporated as though fully set forth herein.

57.     As set forth above, Inoapps breached the May 19, 2020 Employment Agreement, which provide only five (5) grounds for terminating Plaintiff 'for Cause.' Plaintiff was terminated for Cause on June 29, 2020, but the two (2) reasons given for his termination do not comply with any of the grounds expressly stated in the Employment Agreement.  And, additional reasons Inoapps fabricated *after* Plaintiff's termination do not comply with any of the grounds expressly stated in the Employment Agreement.

58.     Additionally or alternatively, because Inoapps' policies and procedures, guidelines, rules, and/or regulations provide express contractual terms regarding Plaintiff's employment services, tiered disciplinary process, and the requirement for an investigation before terminating an employee for gross misconduct, Inoapps breached Plaintiff's Employment Agreement by not adhering to its own policies, procedures, guidelines, rules and/or regulations designated to apply to specific incidences as alleged herein.

59.     Additionally or alternatively, Inoapps violated its own policies and procedures, guidelines, rules, and/or regulations by retaliating against Plaintiff for engaging in a protected activity.

60.     As a result of Inoapps' breach, Plaintiff was denied rights, benefits, and/or remedies contractually afforded to Plaintiff by terminating Plaintiff.  Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any all remedies afforded by Chapter 38 of the Texas Civil Practice and Remedies Code, under law and/or equity,

including but not limited to his damages resulting from said breach by Inoapps in an amount to be proven and/or determined at the time of trial, equitable relief, and attorneys' fees and costs.

### INFERENCE OF PRETEXT SURVIVING SUMMARY JUDGMENT

61.     Paragraphs 1 through 60 of this Complaint are hereby referenced and fully incorporated as though fully set forth herein.

62.     As described more fully above, there are at least five (5) evidentiary examples establishing Inoapps' proffered reasons for terminating Plaintiff are pretextual. First, Inoapps admitted similarly situated White male practice leads were allegedly performing just as poorly as Plaintiff, but those employees were not humiliated during a business review meeting, and they were not terminated for not meeting their numbers. Second, Inoapps told Plaintiff that he was being terminated 'for Cause' because there had been complaints about him.  However, Inoapps did not disclose (i) the nature of the complaints, (ii) the date of the complaints, and (iii) the person(s) making the complaints. Inoapps conducted no investigation, and it did not permit Plaintiff the opportunity to refute the anonymous and unspecified complaints.  Third, Inoapps failed to follow its own tiered disciplinary process as outlined in the Employee Handbook.  Fourth, Inoapps provided other reasons for Plaintiff's termination *after* his dismissal.  Fifth, Inoapps' made false claims about Plaintiff's job responsibilities in order to paint him in a bad light and legitimize its unlawful termination of Plaintiff.  Sixth, there is temporal proximity between Plaintiff's discrimination complaints on behalf of other employees and Inoapps' adverse employment actions against him.

63.    It is settled law that an employer's shifting and dissembling reason for termination may create an inference of pretext through which a Plaintiff may survive summary judgment.  An employer's shifting explanations create a fact question for the jury to decide.  *Nasti v. CIBA Specialty Chemicals Corp*., 492 F.3d 589 (5th Cir. 2007).  "A court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct."  *Id.*

64.    Further, an employer's unexplained departure from its usual policies and procedures may in appropriate circumstances support an inference of discrimination or retaliation.  *See Machincick v. PB Power, Inc.,* 398 F.3d 345, 355 n. 29 (5th Cir. 2005) (defendant's failure to utilize its progressive discipline system, including a verbal warning and written warning, in case involving plaintiff's failure to perform duties, creates an inference of pretext of employer's explanation for discharge)); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 1981) (defendant's failure to follow its own internal procedures prior to terminating employee, along with other evidence, created a jury issue that employer's justification for terminating plaintiff was pretextual)).

65.    Finally, temporal proximity between an employee's protected conduct and his firing cannot alone establish pretext.  However, the Fifth Circuit has found that close temporal proximity in combination with other evidence carries significant weight in the pretext inquiry.  *Watkins v. Tregre*, 997 F.3d 275, 286-88 (5th Cir. 2021).

## V.
## REQUESTED RELIEF

66.     As the direct and/or proximate result of the actions and/or conduct of Inoapps complained of herein, Plaintiff has suffered from intentional discrimination and/or discriminatory treatment, as well as adverse employment actions, unlawful employment practices, and retaliation, which have damaged and caused Plaintiff damages, emotional distress, and mental anguish.  As such, Plaintiff seeks to recover from Inoapps, his actual and/or economic damages occasioned by the wrongful acts of Inoapps herein described, in amounts that are within the jurisdictional limits of this Court to be Proven and/or determined at the time of trial.

67.     As to Plaintiff's claims for breach of contract, Plaintiff sues Inoapps pursuant to Texas statutory law, specifically Chapter 38 of the Texas Civil Practices and Remedies Code.  Because Plaintiff has suffered substantial damages from Inoapps' breach of the May 19, 2019 Employee Agreement, Plaintiff seeks any and all remedies afforded by Chapter 38 of the Texas Civil Practices and Remedies Code, under law, and/or in equity, including but not limited to compensatory damages, consequential and incidental damages, attorneys' fees, and any and all other equitable and compensatory relief that may be available to and or recoverable by Plaintiff.

68.     As to Plaintiff's claims under Title VII, Plaintiff herein sues Inoapps pursuant to 42 U.S.C. §§ 2000e *et. seq.*  All of Inoapps' conduct was under color of law. Accordingly, Plaintiff seeks recovery of the full measure of relief and damages provided by Title VII against Inoapps, including but not limited to damages for his lost wages, past

and future, out-of-pocket losses and/or expenses, emotional pain and suffering, inconvenience, and mental anguish.  Inoapps' conduct was intentional and with a conscious disregard of Plaintiff's rights to equal employment opportunities regardless of his race and national origin or his participation in discrimination complaints on behalf of other employees.  Inoapps' conduct, as alleged herein, was and is despicable, malicious and oppressive; therefore, Plaintiff seeks punitive damages in an amount within the jurisdictional limits of this Court to be proven at trial.

69.     As to Plaintiff's claims under 42 U.S.C. § 1981, Plaintiff seeks recovery of the full measure of relief and damages provided by § 1981.  All of Inoapps conduct was under the color of law.  Inoapps' conduct was intentional and with a conscious disregard of Plaintiff's rights to equal employment opportunities regardless of his race.  Inoapps' conduct, as alleged herein, was and is despicable, malicious and oppressive. Accordingly, Plaintiff seeks recovery of the full measure of relief and damages against Inoapps, including but not limited to compensatory and punitive damages.

70.     As to Plaintiff's claims under Chapter 21 of the Texas Labor Code, Plaintiff herein sues Inoapps pursuant to sections 21.051, 21.055, 21.125, 21.254, 21.258, 21.2585, and 21.259.  All of Inoapps' conduct was under color of law.  Accordingly, Plaintiff seeks recovery of the full measure of relief and damages provided by Chapter 21 of the Texas Labor Code against Inoapps, including but not limited to damages for future pecuniary losses, emotional pain, suffering inconvenience, mental anguish, and loss of enjoyment of life.  Inoapps' conduct was intentional and with a conscious disregard of Plaintiff's rights to equal employment opportunities regardless of his race and national origin or his

participation in discrimination complaints on behalf of other employees.  Inoapps' conduct, as alleged herein, was and is despicable, malicious and oppressive.  Plaintiff seeks back pay and front pay damages and punitive damages from Inoapps in an amount within the jurisdictional limits of this Court to be proven at trial.

## VI.
## FEES, COSTS, AND INTEREST

71.     Plaintiff has retained the law firm Wilson Elser Moskowitz Edelman & Dicker, LLP to represent him in connection with this matter, and has agreed to pay for such reasonable and necessary services.  In addition to and without waiving and/or limiting any other relief requested in this Complaint, Plaintiff is entitled to and seeks to recover his reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law, in equity, and/or pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, 42 U.S.C. §§ 1981, 2000e-5(k), and/or TEX. LABOR CODE § 21.259.

72.     Also, pursuant to 42 U.S.C. § 2000e-5(k) and/or TEX. LABOR CODE § 21.259, Plaintiff seeks to recover any and all expert fees, which he incurs and/or may incur in bringing this suit.

73.     Additionally, Plaintiff seeks to recover costs of court along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.
## CONDITIONS PRECEDENT

74.     All conditions precedent to the relief being sought by Plaintiff in this

Complaint have been performed, have occurred, and/or have been waived.

## VIII.
## DEMAND FOR JURY TRIAL

75.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests

trial by jury and will tender the requisite fee.

## IX.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final

hearing, Plaintiff recover judgment against Defendant Inoapps USA and be awarded:

(1)     any and all amounts recoverable and/or recognizable as damages under law
and/or in equity, resulting and/or occasioned by the wrongful acts and/or
conduct of Inoapps (as set forth above more specifically);

(2)     equitable relief to the extent permitted by law and/or in equity;

(3)     his litigation expenses and costs, including but not limited to his reasonable
and necessary attorneys' fees and costs and any applicable expert fees;

(4)     pre-judgment and post-judgment interest at the maximum rate permitted by
law;

(5)     costs of court; and

(6)     such other and further relief, both general and special, at law and in equity,
to which Plaintiff may show himself justly entitled.

Date:  August 16, 2021            Respectfully submitted,

*Valeri C. Williams*

Valeri C. Williams (TSBN 24058797)
valeri.williams@wilsonelser.com
Sanjay Narayan (TSBN 24103890)
Sanjay.narayan@wilsonelser.com
Roshanak Khosravighasemabadi
(TSBN 24048587)
Roshanak.khosravi@wilsonelser.com
**WILSON ELSER MOSKOWITZ**
 **EDELMAN & DICKER, LLP**
901 Main Street, Suite 4800
Dallas, Texas  75202-3758
214.698.8000 – telephone
214.698.1101 – telecopier

**ATTORNEYS FOR PLAINTIFF**